Thank you. Please be seated. This first case is case number 4-14-1061, People v. Ryan Isaacs. Appearing for repellent is Attorney Sarah Curry, and for the appellee is Attorney Luke McNeil. Good morning. Ms. Curry. Good morning, Your Honors. Sarah Curry from the State Appellate Defender. I represent Ryan Isaacs. I'd like to focus my comments this morning on the issues raised in Arguments 1 and 2 of the briefs. Ryan Isaacs' conviction must be reversed because it was obtained in violation of his right to a statutory speedy trial. Section 103-5 of the Code of Criminal Procedure provides that an out-of-custody defendant is entitled to be tried within 160 days of demanding trial, and a violation of a defendant's right to speedy trial occurs when more than 160 days of the pretrial period are attributable to the State. Here there are essentially two time periods between Isaacs' February 11, 2013, demand for trial and Isaacs' August 6, 2013, filing of a motion to dismiss that are in dispute. The first time period is between June 3 and July 16. On June 3, the case was set for status and no trial date had been set. On that day, Isaacs filed a jury waiver and asked that the case be set for a bench trial. The case was then set for a bench trial on July 16. The State argues that this delay was attributable to Isaacs. Ordinarily, a jury waiver expedites rather than delays a trial. However, rescheduling a trial to accommodate a request for a bench jury trial, and especially late in the 160-day term, can constitute a delay attributable to the defendant. However, neither of those factors occurred in this case. At the time of the jury waiver, the case had not been set for a jury trial, so there was no trial that needed to be rescheduled. Moreover, Isaacs filed his jury waiver on day 112 of the 160-day term, certainly not so far late in the term that this would have been a delay attributable to him. Can you comment as to what the record demonstrates? When defendants waive jury in this case, does the record indicate that there were other cases set behind defendants that had to proceed to jury prior to an opening before the judge for bench trial? At the hearing on the motion to dismiss, the judge did say that there were two weeks of bench trial that, but for the waiver, the case would have been set for jury trial during that period. However, we don't know that the state would have been ready to go to trial during either of those two weeks. It's somewhat speculative. Moreover, the case was then set for a bench trial on July 16th, which was within the 160-day term. So the jury waiver did not move the trial date outside of the 160-day term, and that delay should not be attributable to Mr. Isaacs because of that. Moreover, we're talking about a three-hour bench trial, that even if there were jury, you know, days that were set for jury trials, within, between 112 days and 160 days, they could have slipped this three-hour bench trial in. It would have been more, it would have been easier to schedule than a jury trial. What's the standard of review? The standard of review is de novo. There are no factual issues in question. Why isn't it a factual issue as to whether or not a particular action in the eyes of the jury would have resulted in a delay under Section 103-5? Well, trial court's determination in retrospect was not accurate based on the facts that they were at the time of the jury waiver. The jury waiver did not delay the trial in any means. This court two weeks ago in Beeble v. Pettis addressed a speedy trial violation issue brought by the state and reversed the dismissal, and in so doing, wrote this, evaluating speedy trial issues we consider two standards of review. Trial court's determination as to who is responsible for a delay of the trial is entitled to much deference and should be sustained absent a clear showing that the trial court abused its discretion. For example, the abuse of discretion standard would apply where the court determines whether the defendant agreed to, caused, or objected to a delay. However, the ultimate question as to whether the defendant's statutory right to a speedy trial has been violated is a question of law subject to de novo review, somewhat like when we're reviewing rulings on motions to suppress. Well, under either standard of review, Your Honor, this delay was not attributable to Mr. Isaacs. The case was set for a bench trial within the 160-day term. His jury waiver did not push the case outside of the 160-day term. Well, why isn't that a matter for the trial court's call? That is, if the trial court is ready for a jury trial, and you're assuming that, well, hey, bench trial should be easy, why don't you do it right now? Maybe there's some administrative reason why that doesn't work. Even if that's the case, the case was set for a jury trial on July 16th, which was within the term. The jury waiver itself did not push the case outside of the 160 days, which is what the case law holds, is that the jury waiver is a delay attributable to the defendant where it's at the very end of the term, you know, 159th, 158th day, or the rescheduling of a jury trial that's already been set pushes the case. Why is there a rescheduling of a bench trial once the jury trial's been waived? Why isn't that entitled to? There was no trial date set at the point of the jury waiver. There was no rescheduling that had to be done. Nothing had been set. Well, I'm not sure I understand. The case was ultimately set for trial on a bench trial, wasn't it? Yes. But at the time of the jury waiver, the case wasn't scheduled for a jury trial. There was no rescheduling. The case is – Why does that matter? Because that's what the cases that interpret this, whether it's a delay, if you have to reschedule the trial, then that could be a delay. Well, you had to reschedule it for a bench trial, didn't you? Well, it didn't have to be rescheduled because there was no jury trial schedule. No, no. You're quibbling with terms here. The case was set for a jury trial and was waived. Now it had to be set for a bench trial. Isn't that right? It wasn't set for a jury trial. It was on status. There was no trial date had been set. Well, he changed the status of the case from a jury trial to a bench trial. Correct. What effect did that have administratively and when this case is now going to be ready to be tried? It was ready to be tried at that moment. That's what you're arguing to us, but who makes that call? Isn't that the trial court who's supposed to do that? Yes. And it was scheduled for July 16th, which was within the 160-day term. Well, what about the delay between the two? Why isn't the change of this status something which might cause a delay and is attributable to the defendant? Because the case law holds that. What case law holds that? People B. Fostick and people B. Johnson talk about how it's only a delay attributable to the defendant if a jury trial has been scheduled. These are fact-intensive cases. There's no such holding that the trial judge, you can't consider how this is going to affect your own scheduling. Is there? No. But, again, the case was set for a bench trial within the 160 days, and had it not been for the state thereafter asking for a continuance. Were we wrong two weeks ago when we said that this is a discretionary call? I would argue that under either – Ben Short, after all, dealt with not – it was a very technical application, wasn't it, the question of whether you have to bring a new charge or different charge? I'm not familiar with the facts of that case. That's the one you cite on the grounds that it's the Novo review. Okay. Okay, go ahead. I don't want to take up any more of your time. The second delay is the period between July 9th and August 9th. On July 9th, the case was set for status, and the bench trial had been scheduled for July 16th. The state requested a continuance of the July 16th bench trial because Detective Burroughs, a critical witness according to the state, was on vacation and would not be available to testify that day. Defense counsel stated that if the court were to grant the continuance, they would want a reasonably close alternate date and a resolution as quickly as possible. Defense counsel then objected to the continuance on the record. The trial court granted the continuance over defense objection and then suggested the date of August 7th, 2013 for trial, and defense counsel acquiesced to that date as it worked with his schedule in his other trial cases. The state argues that defense counsel expressly agreed to a trial date outside of the 160-day term and that this delay is therefore a tribute to Isaacs. However, in Cordell, the Illinois Supreme Court held that it's not enough that a defendant demand trial, he must also object to a proposed trial date outside of the 160-day term, which defense counsel did in this case. Defendant demanded trial, and when the state asked for the continuance of the trial date, defense counsel objected. That objection was an objection to any date after July 16th. His subsequent acquiescing to the August 7th trial date was merely acquiescing to his schedule, that date working within his schedule after clearly objecting to any date after July 16th. For that reason, this delay is also attributable to Isaacs. For these reasons, Mr. Isaacs argues that his right to a statutory speedy trial was violated and this Court should reverse his conviction. If this Court chooses not to do that, Section A of the Cyberstalking Statute violates the state and federal constitutions. In People v. Relaford, the First District found that the Cyberstalking Statute at issue in this case was unconstitutional. Relying on the United States Supreme Court decision in Alanis, the First District held that the Cyberstalking Statute was facially unconstitutional under the Due Process Clause because it lacked a mens reo requirement. Relaford is currently pending before the Illinois Supreme Court and this Court should reach the same conclusion that the Relaford Court did. The legislature has wide discretion to establish penalties for criminal offenses, but the discretion is limited by the constitutional guarantee that a person must not be deprived of liberty without due process of law. A statute will be sustained if it bears a reasonable relationship to a public interest to be served and the means adopted are a reasonable method of accomplishing the desired objective. The purpose of the newly added portion of the Cyberstalking Statute, Section A, was to broaden the definition of the offense in an overall effort to protect victims of violent attack who are often stalked before the attack. The Illinois Supreme Court has repeatedly held that a statute violates due process if it potentially subjects wholly innocent conduct to criminal penalty by not requiring a culpable mental state. Statutes that potentially punish innocent conduct violate due process because they are not reasonably designed to achieve their purpose. Here, Subsection A of the Cyberstalking Statute lacks a mens reo requirement, thereby sweeping too broadly to punish innocent conduct. The Cyberstalking Statute does not contain a culpable mental state. It contains a mental state of negligence. Under the Cyberstalking Statute, an individual's conduct is criminal if and only if he knows or should know that it would cause a reasonable person to suffer emotional distress. It does not require criminal intent, it does not require criminal knowledge, and it does not require any criminal purpose. Section A2 contains no requirement that the individual actually inflicting the emotional stress on a person, thereby bypassing the conventional requirements of criminal conduct and awareness of some wrongdoing. In Alanis, the Court found that having liability turn on whether a reasonable person would find the conduct emotionally distressful, regardless of what the defendant thinks, reduces culpability on the all-important element of crime to negligence. The lack of culpable mental state is especially problematic in the context of cyberstalking. Today, a significant amount of communication on political, social, and other issues occurs online and is often abbreviated, idiosyncratic, decontextualized, and ambiguous. As such, it is susceptible to multiple interpretations, making subjective intent requirement especially necessary to ensure that the protected online communication is neither punished nor chilled. Because the statute potentially punishes a significant amount of innocent conduct not related to the statute's purpose, it is not a rational way of addressing the problem of cyberstalking. And this Court should therefore find it unconstitutional. If there are no other questions, thank you. Thank you, Counsel. Mr. McNeil. May it please the Court, Counsel? As for Argument 1, the speedy trial issue, this argument wasn't only forfeited. Defendant conceives it was forfeited, but it was also waived by Counsel's affirmative acquiescence to a trial date that by Defendant's calculations was outside the 160-day period. The reason to come to that conclusion is Second District in Hampton, which I cited in my brief. They stated that to allow Defendant to object to the State's request for a continuance without also objecting to the proposed trial date that is outside of the speedy trial term allows Defendant to use speedy trial statute as a weapon to avoid the threat of a conviction. As the Cordell Supreme Court case states, speedy trial statute is to be used as a shield, not as a sword. Here, Defense Counsel was clearly lying in the weeds waiting to use this speedy trial issue as a sword. He waited one day before trial, and by his calculations, the first day after the 160-day period to bring this speedy trial issue to even mention any kind of speedy trial objection beforehand. Clearly, this issue is not only forfeited, but waived, and therefore, plain error review isn't available. However, the trial court did correctly find that the attributable to Defendant delay between July 9th and July 16th, the 43-day period, between the jury trial waiver and the first bench trial date, was attributable to Defendant. Of course, as Pettis stated, this is a bifurcated standard of review. That's clearly a matter of the trial court's discretion. The trial court can obviously take judicial notice of its own docket. The trial court stated on the record that the only reason this didn't go in late June during that jury trial calendar was because of this jury trial waiver. In your brief, you conceded this is the no lower review. This was before Pettis. Well, that was two weeks ago, a case that your office won on appeal. Is it perhaps supplement? Motion to supplement? Yes. I apologize for not doing that. We were doing back reports in the office when the Pettis opinion did come out. Well, Mr. McNeil, you were just talking about the two-week calendar. You said, I believe, that the record reflects the trial court indicated it would have proceeded during that two-week calendar. At the motion to dismiss hearing, the trial court reflected that. I mean, it was ready to set the trial date, obviously. It set it for a bench trial, the same hearing. Had it not been for a waiver of the jury trial at that hearing, it would have gone on the next jury trial calendar, which was the last two weeks in June. The trial court stated that. Did the trial court also state when its first available setting was for bench trial at the time of the jury waiver? I don't know if they mentioned that, but I'm guessing it would be early July. I mean, it was set in mid-July. No, it did not state if there was a time between this June 3rd hearing and the late June jury trial calendar, but I'm guessing that was not the case. Well, if there's a lack of information in the record on this issue, who should it work against? Well, there's not a lack of information as to why the delay, because the trial court stated if the delay was attributable to the defendant for waiving his jury trial at that time. For all intents and purposes, everybody assumed that this was going to be a jury trial until June 3rd. Right. I understand that. But it doesn't appear that there is information in the record relative to the trial court's schedule as to when it could then hear the case for bench trial and whether or not that then should be a delay attributable to the defendant. I don't know. I don't see it in the briefs. It sounds like what you're indicating here, it's not in the record. The only information we have is the trial court's word that it was going to go in late June, but for this jury trial waiver. Clearly, the only attributable person to attribute that delay to is the defendant. I mean, the state didn't ask for a continuance at that hearing or anything like that. They asked for a continuance later. That was because of somebody on vacation. My guess is they weren't also on vacation in the last two weeks in June. Also, they were going to be on vacation July 16th. There's nothing to suggest that in the record. So clearly, that time is attributable to the defendant, and that puts it well under 160 days. Again, the motion to dismiss was brought at day 161 by defendant's calculation. So clearly, this would put it within the 160-day window. However, as I stated, at that July 9th continuance, the defense counsel only objected when prompted by the trial court, and that was after the state's continuance. He did not then object again after a proposed trial date of August 7th. He didn't say, wait a minute, this is outside of a speedy trial window. He didn't say anything. He said, that's acceptable, and then moved on. Another month, nothing from defense counsel, nothing from defendant. Then, the day before the proposed trial is the motion to dismiss for speedy trial. Clearly, this was using the speedy trial statute as a sword instead of a shield to avoid a conviction, and this court should follow the second district in Hampton on that issue. Trial court's final justification for denying this motion to dismiss based on speedy trial was harmless error. The trial court stated that it would have used its authority under 103-5C to extend the 160-day period another 60 days due to an unavailable state witness. It stated it would have done that. The record, of course, is undeveloped on that count. However, we do know that there was a material state witness. He was a forensic examiner who examined the defendant's computer. He was on vacation at the time, meaning he was going to come back soon. It wasn't like they couldn't locate him or anything like that. This seems to fit under the trial court's authority in 103-5C. The trial court stated it would use that authority. Therefore, any error is harmless beyond a reasonable doubt, even assuming that the 160-day period had elapsed. Moving on to the constitutionality issue, I recognize People v. Relaford. However, upon examining Relaford and examining the U.S. Supreme Court case, it's clear that Relaford took Elonis too far and misapplied this sort of negligence state of mind. Can you explain your attempt to distinguish Elonis from the statute in this case? First of all, the Supreme Court in Elonis didn't hold that that specific statute was facially unconstitutional. They only held that the jury was instructed improperly. In fact, Elonis stated, There is no dispute that the mental state requirement in Section 875C is satisfied if the defendant transmits a communication for the purpose of issuing a threat or with knowledge that the communication will be viewed as a threat. In other words, that reflects the exact statute here. The culpable mental state of knowledge satisfies that section of the U.S. Code. It also satisfies this general stalking and cyber-stalking statute here. Again, the statute reads, A person commits cyber-stalking when he engages in coerced conduct using electronic communication directed at a specific person, and he knows or should know that would cause a reasonable person to fear for their safety or suffer other emotional distress. The culpable mental state of knowledge applies not only to the course of conduct here, it applies to the intended harm to the victim. I think that what threw the Relaford Court off is the fact that the phrase reasonable person is in this statute, and of course that's a common, I don't remember much civil law from law school, but I remember that the negligence standard is a failure to use such care as a reasonable person would use under similar circumstances. That definition, the reasonable person is the actor or would be the defendant in a civil case. The reasonable person in this statute is the victim. It's not the defendant who has the reasonable person standard in this case. It's maybe misleading for the legislature to use the term reasonable person. However, the reasonable person is describing the victim here. It's not describing defendant. Defendant has to act with the knowledge that his course of conduct would cause a reasonable person in defendant's position or in the victim's position to fear for their safety or suffer other emotional distress. Clearly, there's a culpable mental state of knowledge, and Elonis supports that. Like I said, they stated the mental state requirement is satisfied if the defendant transmits communication with the knowledge that the communication will be viewed as a threat. Of course, there's more than just threat here. The course of conduct has many surveillance, threatens, communicates, anything that would cause a person to fear for their safety or suffer other emotional distress. Elonis does not stand for the fact that that statute is facially unconstitutional, and Relaford sort of contorts Elonis into saying that. Relaford says, as currently drafted, subsection A2 bypasses the conventional requirement for criminal conduct, awareness of some wrongdoing, but that's just not the case. The statute has to require the defendant to act with knowledge that this would cause a reasonable person to fear for their safety or suffer significant emotional distress. So that's sort of taking Elonis out of context in Relaford. And based on that, I would urge this Court to sort of examine Elonis along the lines of Relaford, which is not a mandate yet. It's up for PLA at the Supreme Court. But I would submit that Elonis does not, in fact, hold what the Relaford Court says it holds. It does not find that a similar statute is facially unconstitutional. It says that the mental state is, in fact, satisfied with knowledge. And that's exactly what we have in these statutes. As for the void for vagueness issue, the defendant's argument is posited on the section of the statute defining force of conduct to include acts that the defendant commits indirectly or through third parties. Here, there is no communication indirectly or through third parties. This was communication directed specifically at the victim through email. Therefore, this argument has no reason to decide this as far as the disposition of this case is concerned. And this Court should disregard that. As far as the overbreadth doctrine, I cited the recent Third District case, People v. Nicholson. It recently rejected an overbreadth challenge of the Stalking No Contact Order Act. It contains language almost identical to the applicable language in the cyberstalking and general stalking statutes. What about the defendant's claim that it violates free speech? Well, this is not protected speech. That's what the Nicholson Court decided as well. I would say that the Nicholson Court stated the only speech that's prohibited by the act are threats of violence or intimidation, which are not constitutionally protected in any event. Like I said, taking into account that the defendant has to communicate or engage in this force of conduct, whatever the force of conduct is, with the knowledge that a reasonable person would be scared or fear for their safety or suffer emotional distress. Therefore, this is not protected speech. Like Nicholson found, this is speech that is an integral part of an illegal force of conduct. So therefore, it's not protected. It's not overbroad. And keep in mind the Supreme Court's warning I cited that because of the overbreadth doctrine, the tendency to summon forth an endless stream of fanciful hypotheticals, the mere fact that one can conceive of some impermissible applications of a statute is not sufficient to render it susceptible to an overbreadth challenge. I think that's sound advice for the fanciful hypotheticals that could develop under any of these constitutional arguments. It wasn't addressed in Ms. Curry's original argument, but in her brief she argues that there was a gap in the evidence, that there was no evidence establishing the source of the IP addresses. Well, multiple investigators testified that this was indeed the defendant's IP address and these emails came from the defendant's laptop. No one stopped the defendant from calling an expert to refute this. No one stopped the defendant from having someone testify that these guys are wrong. But as far as the record goes, this is the evidence that the trial court had. There's nothing to suggest that it's incredible. These guys were forensic investigators. They testified that this was the defendant's IP address in his laptop that sent these emails. Are you suggesting that the burden of production is on the defendant as to establishing the source of the IP address? I'm just saying that the same standard of review applies for all the sufficiency of the evidence arguments and there's nothing to suggest that these guys' methods were improper the way they investigated it. That's the linchpin of this case, it would seem. The identification of the IP addresses, because it all flowed from that. They take the IP addresses that they get from somewhere and then everything flows from there. Is that right? I would say the smoking gun is the defendant's admission in this case more than the IP address. The defendant admitted that he created multiple email accounts, one of which was named Carol Jeffers, which was the fake name used in the emails to the victim. The only logical inference to make from this is that the defendant was the one sending these emails. Even if we take the circumstantial evidence of the IP address and the laptop with a grain of salt, if there were deficiencies in the investigative process, still taking all the evidence, looking at it in the light most favorable to the prosecution, there was clearly the only logical inference to make is that the defendant was the one who sent these emails. And if there are no more questions, I thank the Court. I don't see any. Thank you. Ms. Burdick. First, in regard to this PD trial issue, I would posit what else was defense counsel to do at the point where he objected to the continuance and the Court then overrules his objection and sets a trial date outside of 160 days. He's voiced his objection to any date after July 16th. He's voiced his objection to any date that's going outside of the term. He did not agree to a term outside the PD trial term. He merely acquiesced to the trial court saying this is what we're going to do. And interestingly, at the hearing on the motion to dismiss, this time period wasn't even at issue. So the trial court didn't find that defense counsel's agreeing to the August 7th trial date was a delay attributable to the defendant. The trial judge was there, heard the objection, and he gave this time period as a delay attributable to the state at the hearing on the motion to dismiss. In regard to plain error, Illinois courts have routinely held that the statutory right to a speedy trial is a fundamental and substantial right, which requires plain error review. Alternatively, defense counsel didn't even file a motion for new trial, unfortunately, and any error that was ineffective assistance of counsel in failing to preserve this error for Mr. Isaacs. In regard to the constitutionality argument, Alanis is a jury instruction issue. It wasn't a case where they were looking at the federal statute. However, the federal statute has a knowing intent. It also requires a true threat. It's not an emotional distress issue. That statute has been found to be constitutional. Here it was how the jury was instructed regarding the statute. And the Illinois statute doesn't say knowingly. It's not a knowing intent. It says knows or should know, which is a negligent standard. It's not a knowing standard. If it said he knows, that would be good enough? It would be better. That wasn't my question. No, it would not be mine because you have a reasonable person standard, which also these two together form a negligent standard. And interestingly, the stalking statute at least requires that the defendant knowingly engage in the course of conduct. The cyber stalking statute doesn't even have that original knowingly engaging in the course of criminal conduct. There's nothing criminal. There's no criminal intent required from the statute to find out that a reasonable person suffers emotional distress. And we may talk about crazy hypotheticals, but under the cyber stalking statute, if I were to text my sister and say our mother has been admitted to the hospital with heart pain, that would cause her anxiety, alarm. If I then two hours later texted her, mom's gone into a coma, certainly, again, she would suffer anxiety and alarm. I would be convicted of cyber stalking. The statute is unconstitutional, and we ask for this court. Now, what if it were true, what you texted your sister? There's no requirement that it be true or false. So merely that it could create emotional distress is enough? Yes. Whether I knew or should have known. How about a First Amendment analysis on the disorderly conduct that speaks in general terms. First, disorderly conduct when he or she knowingly does any act in such a reasonable manner as to alarm, disturb another, and provoke breach of peace. Someone calls up and says, I know your seven-year-old goes to school and you can't be there at all times to protect him, and does that three or four times. Would that be a criminal act? It's the statute that's unconstitutional. Disorderly conduct. Would that be a violation of the First Amendment? I am not as familiar with the disorderly conduct. I just read it to you. I was. A person commits disorderly conduct when he or she knowingly does any act in such a reasonable manner as to alarm, disturb another, and provoke a breach of peace. So you made multiple phone calls about how you can't always be there to protect your seven-year-old and know where he goes to school and know when he's out with his friends at his park? That's a factual issue under that statute. I can't speak to that. Well, what's your sense about the First Amendment application? Is that protected speech? I can't answer that. I don't know. Well, I'm concerned that if that isn't. It's protected speech that's content-based, which is the effect on the hearer. So in the case of cyberstalking, the effect on the hearer is whether it causes them emotional distress. And so that does make it content-based. And there are only a few exceptions to where we can regulate content-based speech, truth threats, fighting words, and what not. And under the cyberstalking statute, none of these falls into those categories. All right. Thank you. Thank you both. Case will be taken under advisement and a written decision is established. Court stands at recess.